UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY D. JOHNSON,

        Plaintiff,        Case No. 1:12-cv-1368

v.        Honorable Gordon J. Quist

CORIZON CORRECTIONAL
HEALTHCARE et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Lafler, Trierweiler, Schafer, Isaacs, McKenna, Hogan, Pugh and Filsinger. The Court will serve the complaint against the remaining Defendants.

**Factual Allegations**

Plaintiff is a former prisoner with the Michigan Department of Corrections (MDOC), who was housed at the Carson City Correctional Facility (DRF) at the times relevant to his complaint. He sues Corizon Correctional Healthcare (Corizon) and the following DRF employees: Warden Blaine C. Lafler; Deputy Warden Tony Trierweiler; Assistant Deputy Warden Donna Schafer; Doctors Richard Anthony Miles and Gamat Amin Isaacs; Health Unit Manager Eileen McKenna; Registered Nurses Barbara Plath, Summer Laughhunn, Jill Keller-Jerome, Paula Wiles, Susan Hogan, Julie Pugh, and Michelle Bowman-Jones-Torres; and Nurse Practitioners Kent Filsinger and Melissa Hearld. Plaintiff also sues the following MDOC and Corizon medical employees located in Lansing, Michigan: Doctors Adam Edelman, Haresh Pandya, and Jeffrey C. Stieve.

According to the complaint, Plaintiff was diagnosed in November 2007 with peripheral artery disease (PAD)[1] of his right leg. On March 8, 2009, Plaintiff sent a medical kite to health services, complaining of sharp pain in his right leg. He was seen on March 9, 2009 by Defendant Hogan. At that time, Hogan found no palpate pedal or popliteal pulses and noted that Plaintiff's leg was cool to the touch from mid-tibia to toes, that he had no capillary refill in his affected toes, and that he had discoloration of the toes and was experiencing pain. As a result of the findings, Plaintiff was sent to the emergency room at the Ingham Regional Medical Center for

---

[1] As defined by the National Heart and Blood Institute of the National Institutes for Health, "[p]eripheral artery disease is a disease in which plaque (plak) builds up in the arteries that carry blood to your head, organs, and limbs. Plaque is made up of fat, cholesterol, calcium, fibrous tissue, and other substances in the blood. When plaque builds up in the body's arteries, the condition is called atherosclerosis (ATH-er-o-skler-O-sis). Over time, plaque can harden and narrow the arteries. This limits the flow of oxygen-rich blood to your organs and other parts of your body. P.A.D. usually affects the arteries in the legs, but it also can affect the arteries that carry blood from your heart to your head, arms, kidneys, and stomach." *See* http://www.nhlbi.nih.gov/health/health-topics/topics/pad/ (last visited Jan. 9, 2013).

treatment. He remained at the hospital until March 17, 2009. While at the hospital, Dr. Joseph Cotroneo ordered a CT Angiogram. Plaintiff was placed on telemetry, Heparin drip, Coumadin, and intravenous fluids. On March 30, 2009, Dr. Cotroneo conducted an Ankle Brachial Index (ABI) test. The test showed a result of .81, meaning a mild occlusion.

On March 21, 2009, Plaintiff sent a medical kite to DRF health services, complaining of severe pain in his right leg. Defendant Isaacs examined him on March 22, 2009, finding no DP/PT pulses.[2] Defendant Isaacs told Plaintiff that he would file a referral request with PHS.[3] Defendant Isaacs did not provide further care at that time. On June 8, 2009, because he could not feel "R/DP & PT pulses," Defendant Isaacs filed a consultation request for radiology, specifically, a "Doppler Study RLE.ABI/Test." Defendant Edelman denied the request on June 10, 2009. (Compl. ¶¶ 32-33, docket #1, Page ID#6.)

Plaintiff submitted a medical kite on June 11, 2009, complaining of "the worse [sic] pain in my right leg that I ever had . . . ." (*Id.* ¶ 34, Page ID##6-7.) Defendant Isaacs told Plaintiff that Defendant Edelman had recommended conservative treatment in the form of walking. No other care was provided. Also on June 11, 2009, Plaintiff sent a letter to Defendant Warden Lafler, who did not intervene in Plaintiff's medical treatment. Plaintiff was seen in healthcare by Defendants Laughhunn and Keller-Jerome on June 12 and 13, 2009, based on his complaints of pain. The nurses allegedly failed to treat Plaintiff. On June 15, 2009, Plaintiff was seen by Defendant Isaacs. Plaintiff complained that he could not walk more than 50 feet because of severe pain. Isaacs found

---

[2]Dorsalis pedis, posterior tibial pulses. *See* THE FREE DICTIONARY, http://medical-dictionary.thefreedictionary. com/DP%2FPT (last visited Jan. 7, 2013.)

[3]On June 13, 2011, PHS (Prison Health Services Correctional Healthcare) and CMS (Correctional Medical Services, Inc.) announced that they were merging to become Corizon. *See* Corizon Press Release, June 13, 2011, http://www.corizonmedia.com/Corizon-News/Corizon-Launches-From-Correctional-Healthcare-Merger1.

only a "faintly palpable PT/Pulse." (*Id.* ¶ 38, Page ID#7.) Defendant Isaacs sent a consultation request to Corizon, seeking a Doppler study and an appointment with Dr. Joseph Cotroneo. Defendant Edelman denied the request on June 16, 2009, because Plaintiff has already had an arteriogram and his condition was known. Edelman found that surgery was not warranted at that time.

Plaintiff complained about severe pain on June 18, 2009, and he was seen that day by Defendant Plath. No treatment was provided. He complained again on June 22, but was not seen by Defendant Hogan until June 25. Hogan did not treat him, but Plaintiff was seen by Isaacs the same day. Isaacs told Plaintiff that two people at Corizon were scheduled to meet to decide what to do about Plaintiff's pain. Plaintiff alleges that Defendants Hogan and Isaacs conspired to deprive him of treatment.

On June 30, 2009, Plaintiff complained that his leg was excruciatingly painful and his toes were turning dark purple. He was seen by Defendant Keller-Jerome on July 1, but she allegedly failed to treat his pain. Plaintiff complained again of pain on July 8, 2009. Defendant Laughhunn saw him in healthcare, but provided no treatment. Defendant Isaacs saw him the following day, informing Plaintiff that his case was on appeal and he could expect a response in one to two weeks. Plaintiff was seen by Defendant Isaacs on July 28, 2009 for his complaints of severe pain and inability to walk. The following day, July 29, 2009, Plaintiff saw Defendant Laughhunn about the same complaint. Laughhunn allegedly refused to treat the injury. On July 30, Plaintiff again saw Laughhunn. Laughhunn noted that the capillary refill on Plaintiff's foot was sluggish. No treatment was provided other than examination.

Plaintiff was seen by Defendant Isaacs again on August 13, 2009. Plaintiff told Isaacs that he had severe pain in his right leg, foot and behind the knee. He also complained that the pain made it difficult for Plaintiff to sit in his wheelchair. Plaintiff sent a medical kite to Defendants Edelman and McKenna on August 18, 2009. On August 20, Plaintiff was seen by Defendant Isaacs, who again failed to treat the pain. On August 27, Plaintiff saw Isaacs again about the pain. Isaacs again failed to treat the pain. On September 3, 2009, Plaintiff was examined by Defendant Isaacs and Nurse Black. Although they could not palpate DP and PT pulses in Plaintiff's right leg, Defendants allegedly refused to provide treatment.

Plaintiff was next seen by a health provider on September 29, 2009, at which time Defendant Keller-Jerome found no pedal pulses and only weak pulses behind the right foot and heel. Keller-Jerome provided no treatment. On October 1, Plaintiff was seen in health care by Defendants Plath and Isaacs. Isaacs informed Plaintiff that he would not receive treatment until his leg turned purple. Plaintiff was seen on October 8 by Defendant Filsinger. He was seen on October 15 and November 5 by Defendant Laughhunn. Plaintiff allegedly received no treatment on any of these dates. Plaintiff sent a letter to Defendant Deputy Warden Trierweiler on November 10, 2009, but Trierweiler did not intervene.

Plaintiff was seen on November 19 by Defendant Filsinger, on November 26 by Defendant Bowerman, and on December 3 by Defendants Laughhunn and Wiles. On December 3, Defendants Laughhunn and Wiles noted that pulses were absent in Plaintiff's right foot, that petechiae were scattered over his foot, and that capillary refill was sluggish. Plaintiff received no treatment.

Plaintiff wrote to Defendant Warden Lafler on December 8, 2009. Lafler did not intervene in Plaintiff's medical treatment. On December 10, Plaintiff was seen in health services by Defendants Pugh and Miles. Defendant Pugh performed an ABI test, which showed severe claudication of the arteries with a score of .41. Neither Defendant provided further treatment. Plaintiff was seen on December 14 by Defendant Bowerman, on December 16 by Defendants Miles and Torrez, and on December 18 by Defendant Laughhunn. Despite their inability to obtain a pulse in Plaintiff's foot, no Defendant provided treatment.

Plaintiff sent another letter to Defendant Deputy Warden Trierweiler on December 20, 2009, complaining about his treatment and alleging that MDOC healthcare providers were violating his civil rights. Trierweiler did not intervene. Plaintiff was seen by Defendant Bowerman on December 31, 2009 and January 4, 2010. On the latter date, Plaintiff complained that his toes had turned purple. Bowerman told Plaintiff that a guard or inmate needed to confirm that Plaintiff's toes had turned purple. Plaintiff was seen on January 7 by Defendant Plath, on January 12 by Defendants Miles and Smith, and on January 19 by Defendants Miles and Hogan. Hogan noticed Plaintiff's toes were cool to the touch. No Defendant treated the pain.

On January 24 and January 31, Plaintiff sent additional letters to Defendant Warden Lafler, complaining that his Eighth Amendment rights were being violated. On February 7, Plaintiff sent another letter to Defendant Trierweiler. Neither Lafler nor Trierweiler intervened. Plaintiff was seen by Defendant Laughhunn on February 17, 2010, who again failed to provide treatment. On February 21, Plaintiff sent a letter to Defendants Stieve, Edelman and Pandya and unnamed medical provider Steele, informing them of his immediate medical need for treatment for his severe

occlusion, which had been scored at .37. Plaintiff was seen by Defendant Hearld on February 25, 2010.

On March 1, 2010, Plaintiff was sent to vascular specialist Dr. Joseph Cotroneo. Cotroneo noted that Plaintiff had a recurrence of claudication and advancement of his diseases. He ordered a CT angiogram, which confirmed "multilevel stenosis, especially distal to that stent. Also there is probable total occlusion of the very distal posterior tibial artery and some moderate stenosis of the right common iliac artery." (Compl. ¶87, Page ID#18.) On March 4, Plaintiff was seen by Defendant Miles. At that time, Miles noted that Plaintiff had been seen by Cotroneo on March 1, 2010, and he made the following medical entry: "Dr. Squier was contacted; the case was discussed with her. She said to hold on doing the 407's for the above requests until she has gone over this case with Dr. Edelman." (*Id.* ¶ 88.) Plaintiff was then seen by Defendant Keller-Jerome on March 11, by Defendant Wiles on March 15, by Defendant Keller-Jerome on April 1, by Defendant Laughhunn on April 8, and by Defendant Keller-Jerome on April 22, 2010. Plaintiff's pain allegedly was not treated.

On May 1, 2010, Plaintiff was discharged from the MDOC. He claims that Defendants caused him to endure great physical pain and to suffer the eventual loss of his right leg below the knee on April 10, 2011.[4] He alleges that Defendants' actions violated the Eighth Amendment and that all named Defendants conspired to deprive him of his rights under the Eighth and Fourteenth Amendments. For relief, he seeks compensatory and punitive damages.

---

[4]Plaintiff's complaint is entirely focused on the adequacy of Defendants' care for his right leg and foot, and he indicates in the complaint that the right leg was amputated below the knee sometime after his discharge. In the following paragraph, however, Plaintiff mentions for the first time his *left* leg was amputated on April 10, 2011. (Compl. ¶ 106, Page ID#22.) The Court assumes that the reference is a typographical error and that April 10, 2011 was the date his *right* leg was amputated.

**Discussion**

I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Conspiracy

To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action.'" *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *see also Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011)

Plaintiff's allegations of conspiracy are conclusory and speculative. The allegations, even viewed in the light most favorable to Plaintiff, demonstrate that Plaintiff was very frequently seen by numerous medical providers over a one-year period of time. Even assuming that Plaintiff

can demonstrate that all Defendants acted in accordance with a medical treatment program that was inadequate in some way at some time, Plaintiff fails to allege any fact suggesting that any Defendant shared a conspiratorial objective to injure Plaintiff or to deprive him of his Eighth Amendment rights. The allegations therefore do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. As a result, Plaintiff fails to state a plausible claim of conspiracy.

### B. Supervisory Liability

Plaintiff fails to make specific factual allegations against Defendant Warden Lafler and Defendant Deputy Warden Trierweiler, other than his claim that they failed to respond to his letters of complaint or failed to take action to control their alleged subordinates in the healthcare department.[5] Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based

---

[5]It does not appear that the Warden and Deputy Warden have supervisory authority over employees of the healthcare department, at least with respect to the delivery of medical care. Under MDOC policy, wardens and their deputies are the Step II respondents for most grievances about overall operations of the facility and the custody staff. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130 ¶ DD (eff. Jul. 9, 2007). Step II and Step III grievances about healthcare issues are the responsibility of the Regional Health Administrator and the Bureau of Health Care Services. *Id.,* ¶¶ DD, GG.

upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Lafler and Trierweiler engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### C. Lack of Allegations

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73

(W.D. Mich. 1991). Plaintiff fails to even mention Defendant Schafer in the body of his complaint. His allegations against Defendant Schafer therefore fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### D. Statute of Limitations

Plaintiff alleged that Defendants failed to provide him constitutionally adequate medical care from March 2009 to May 1, 2010, when he was released from prison. He alleges that it was obvious from at least May 21, 2009, that the lack of medical care was causing his health to deteriorate. (*See* Compl. ¶ 101, Page ID#20.)

A substantial portion of Plaintiff's complaint is untimely. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[6]

---

[6] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981, does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

Plaintiff had reason to know of the "harms" done to him at the time any individual refused to treat him. Hence, a large part of his claim accrued between March 2009 and December 2009. Plaintiff did not file his complaint until December 14, 2012, past Michigan's three-year limit for all conduct preceding December 14, 2009. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* MICH. COMP. LAWS § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

Plaintiff's allegations against Defendants Isaacs, McKenna, Hogan, Pugh, and Filsinger involve conduct occurring more than three years prior to the filing of Plaintiff's complaint. Because Plaintiff makes no allegations against Defendants Isaacs, McKenna, Hogan, Pugh, or Filsinger about conduct that occurred after December 14, 2009, his claims against them fail to state a claim because they are time-barred. *See Jones v. Bock*, 549 U.S. 199, 920-21 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ."). In addition, Plaintiff's claims against any remaining Defendants arising out of conduct that occurred prior to December 14, 2009 also are barred by the statute of limitations.

### E.     Remaining Defendants

The Court concludes that Plaintiff's remaining claims are sufficient to warrant service of the complaint on Defendants Corizon Correctional Healthcare, Miles, Edelman, Stieve, Pandya, Plath, Laughhunn, Keller-Jerome, Wiles, Bowerman-Torres and Hearld.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Lafler, Trierweiler, Schafer, Isaacs, McKenna, Hogan, Pugh and Filsinger will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2). The Court will serve the complaint against Defendants Corizon, Miles, Edelman, Stieve, Pandya, Plath, Laughhunn, Keller-Jerome, Wiles, Bowerman-Torres, and Hearld.

An Order consistent with this Opinion will be entered.

Dated: January 22, 2013              /s/ Gordon J. Quist
                                     Gordon J. Quist
                                     United States District Judge