UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY JOHNSON,

   Plaintiff,         Hon. Gordon J. Quist

v.               Case No. 1:12 CV 1368

CORIZON CORRECTIONAL
HEALTHCARE, et al.,

   Defendants.
_____/

## REPORT AND RECOMMENDATION

   This matter is before the Court on <u>Defendant Keller-Jerome's Motion for Summary Judgment</u>. (Dkt. #40). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted**.

## BACKGROUND

   Plaintiff makes the following allegations in his unverified complaint. (Dkt. #1). On or about November 2007, Plaintiff was diagnosed with Peripheral Artery Disease (PAD) in his right leg. (Dkt. #1 at ¶ 26). On March 8, 2009, Plaintiff submitted a medical kite requesting treatment for a "sharp pain" in his leg. (Dkt. #1 at ¶ 27). The following day, Plaintiff was examined by Nurse Susan Hogan who discerned abnormalities in Plaintiff's lower extremity. (Dkt. #1 at ¶ 27). Plaintiff was immediately transported to the emergency room at Ingham Regional Medical Center where he underwent treatment for eight days. (Dkt. #1 at ¶¶ 28-29).

On May 21, 2009, Plaintiff submitted a medical kite requesting treatment for "severe pain" in his right leg. (Dkt. #1 at ¶ 31). Plaintiff was examined the following day by Dr. Gamat Isaacs.[1] (Dkt. #1 at ¶ 31). The doctor was unable to palpate pulses in Plaintiff's lower extremity. (Dkt. #1 at ¶ 31). Dr. Isaacs informed Plaintiff that he "would file a referral request with PHS."[2] (Dkt. #1 at ¶ 31). On or about June 8, 2009, Dr. Isaacs submitted a consultation request for Plaintiff to participate in a doppler study. (Dkt. #1 at ¶ 32). This request was denied by Dr. Adam Edelman on June 10, 2009. (Dkt. #1 at ¶ 33).

On June 11, 2009, Plaintiff submitted a medical kite requesting treatment for pain in his right leg. (Dkt. #1 at ¶ 34). Plaintiff was examined by Dr. Isaacs who informed Plaintiff that Dr. Edelman suggested that Plaintiff's pain would diminish with walking. (Dkt. #1 at ¶ 34). Later that day, Plaintiff sent a letter to Warden Blaine Lafler complaining of the "severe pain and serious injury" he was experiencing in his right leg and the "lack of treatment" he was receiving for such. (Dkt. #1 at ¶ 35). Warden Lafler "refused to intervene" on Plaintiff's behalf, but instead "conspired with the health care staff to prevent the Plaintiff from receiving treatment for serious medical needs." (Dkt. #1 at ¶ 35).

On June 12, 2009, Plaintiff met with Nurse Summer Laughhunn who "refused" to provide Plaintiff with medical treatment. (Dkt. #1 at ¶ 36). The following day, Plaintiff met with Nurse Jill Keller-Jerome who likewise "refused" to provide Plaintiff with medical treatment. (Dkt. #1 at ¶ 37).

On June 15, 2009, Plaintiff was examined by Dr. Isaacs. (Dkt. #1 at ¶ 38). The doctor discerned abnormalities in Plaintiff's right lower extremity and submitted another consultation request

---

[1] In his complaint, Plaintiff asserts that he submitted this particular medical kite on *May* 21, 2009, and was examined by Dr. Isaacs on *March* 22, 2009. Given the chronology of other events described in Plaintiff's complaint, it appears that Plaintiff intended to assert that he was examined by Dr. Isaacs on *May* 22, 2009.

[2] Plaintiff does not indicate to what the acronym PHS refers.

that Plaintiff participate in a doppler study and be examined by a different physician. (Dkt. #1 at ¶ 38). This request was again denied by Dr. Edelman. (Dkt. #1 at ¶ 39).

On June 18, 2009, Plaintiff met with Nurse Barbara Plath who "refused to treat Plaintiff's severe pain and serious injury." (Dkt. #1 at ¶ 40). On June 22, 2009, Plaintiff submitted a medical kite requesting treatment for "severe and excruciating" pain in his right lower extremity. (Dkt. #1 at ¶ 41). On June 25, 2009, Plaintiff met with Dr. Isaacs and Nurse Hogan both of whom refused to provide Plaintiff with medical treatment. (Dkt. #1 at ¶ 42). On June 30, 2009, Plaintiff submitted a medical kite requesting treatment for severe pain in his right lower extremity. (Dkt. #1 at ¶ 43). On July 1, 2009, Plaintiff met with Dr. Isaacs and Nurse Keller-Jerome both of whom refused to provide him with medical treatment. (Dkt. #1 at ¶ 44). On July 8, 2009, Plaintiff met with Nurse Laughhunn who "refused to treat Plaintiff's severe pain and serious injury." (Dkt. #1 at ¶ 45). The following day, Plaintiff met with Dr. Isaacs who likewise "refused" to provide him with medical treatment. (Dkt. #1 at ¶ 46).

On July 15, 2009, Dr. Isaacs informed Plaintiff that he would receive "no treatment" for his lower extremity "until the leg needs to be amputated." (Dkt. #1 at ¶ 47). On July 23, 2009, Plaintiff was examined by Dr. Isaacs who "could not find a pulse in Plaintiff's foot." (Dkt. #1 at ¶ 48). The doctor nevertheless "refused" to provide Plaintiff with medical treatment. (Dkt. #1 at ¶ 48). Plaintiff again met with Dr. Isaacs on July 28, 2009. (Dkt. #1 at ¶ 49). The doctor "refused" Plaintiff's request for medical treatment and instead instructed Plaintiff "that he needed to walk." (Dkt. #1 at ¶ 49).

On July 29, 2009, Plaintiff met with Nurse Laughhunn who "refused to treat Plaintiff's severe pain and serious injury." (Dkt. #1 at ¶ 50). The following day, Plaintiff met with Nurse Laughhunn who again "refused to treat" Plaintiff's "severe pain and serious injury." (Dkt. #1 at ¶ 51).

On August 6, 2009, Plaintiff was examined by Dr. Isaacs and Nurse Lynn Henschell. (Dkt. #1 at ¶ 52). Isaacs and Henschell were both unable to palpate a pulse in Plaintiff's right lower extremity, but nevertheless refused to provide Plaintiff with medical treatment. (Dkt. #1 at ¶ 52). On August 13, 2009, Plaintiff met with Dr. Isaacs who again refused to provide Plaintiff with medical treatment. (Dkt. #1 at ¶ 53). On August 18, 2009, Plaintiff sent a medical kite to Dr. Edelman and Eileen McKenna "complaining of severe and excruciating pain in the right leg and foot." (Dkt. #1 at ¶ 54). Neither Edelman nor McKenna responded to Plaintiff's kite and instead "conspired to prevent the Plaintiff from receiving treatment for serious medical needs." (Dkt. #1 at ¶ 54).

On four occasions between August 20, 2009, and September 10, 2009, Plaintiff met with Dr. Isaacs and each time the doctor "refused" to provide Plaintiff with medical treatment. (Dkt. #1 at ¶¶ 55-58). On September 29, 2009, Plaintiff was examined by Nurse Keller-Jerome who "refused" to provide Plaintiff with medical treatment. (Dkt. #1 at ¶ 59). On October 1, 2009, Plaintiff was examined by Nurse Plath who "refused" to provide Plaintiff with medical treatment. (Dkt. #1 at ¶ 60). Plaintiff subsequently spoke with Dr. Isaacs who informed Plaintiff that he "was not going to receive any treatment until his leg turns purple." (Dkt. #1 at ¶ 60).

On October 8, 2009, Plaintiff was examined by Nurse Kent Filsinger. (Dkt. #1 at ¶ 61). Filsinger "refused" to provide Plaintiff with medical treatment and instead "conspired with other health care staff to prevent the Plaintiff from receiving treatment for serious medical needs." (Dkt. #1 at ¶ 61). On October 15, 2009, and again on November 5, 2009, Plaintiff was examined by Nurse Laughhunn who "refused" to provide Plaintiff with medical treatment. (Dkt. #1 at ¶¶ 62-63).

On November 10, 2009, Plaintiff sent a letter to Deputy Warden Tony Trierweiler "complaining of the lack of treatment" he was receiving. (Dkt. #1 at ¶ 64). Trierweiler "refused to

intervene" on Plaintiff's behalf and instead conspired with other prison officials to deny Plaintiff medical care. (Dkt. #1 at ¶ 64). On November 19, 2009, Plaintiff was examined by Nurse Filsinger who "refused" to provide Plaintiff with medical treatment. (Dkt. #1 at ¶ 65). On November 26, 2009, Plaintiff was examined by Nurse Jan Bowerman-Torres who likewise refused to provide Plaintiff with medical treatment. (Dkt. #1 at ¶ 66).

On December 3, 2009, Plaintiff was examined by Nurse Laughhunn and Nurse Paula Wiles. (Dkt. #1 at ¶ 67). Despite discerning abnormalities in Plaintiff's right lower extremity, Laughhunn and Wiles both refused to provide Plaintiff with medical treatment. (Dkt. #1 at ¶ 67). On December 8, 2009, Plaintiff sent a letter to Warden Lafler complaining of the "severe pain and serious injury" he was experiencing in his right leg and the lack of treatment he was receiving for such. (Dkt. #1 at ¶ 68). The Warden "refused to intervene" on Plaintiff's behalf, but instead "conspired with the health care staff" to prevent Plaintiff from receiving medical treatment. (Dkt. #1 at ¶ 68).

On December 10, 2009, Plaintiff was examined by Dr. Richard Miles and Nurse Julie Pugh. (Dkt. #1 at ¶ 69). Despite discerning abnormalities in Plaintiff's right lower extremity, Miles and Pugh both refused to provide Plaintiff with medical treatment and instead conspired to prevent Plaintiff from receiving medical treatment. (Dkt. #1 at ¶ 69). On December 14, 2009, Plaintiff was examined by Nurse Bowerman-Torres. (Dkt. #1 at ¶ 70). Despite Plaintiff's complaints of pain, Bowerman-Torres refused to provide Plaintiff with medical treatment. (Dkt. #1 at ¶ 70). Two days later, Plaintiff was examined by Dr. Miles who "informed Plaintiff that he wasn't going to treat the Plaintiff." (Dkt. #1 at ¶ 71). On December 18, 2009, Plaintiff was examined by Nurse Laughhunn who refused to provide Plaintiff with medical treatment. (Dkt. #1 at ¶ 72). On December 20, 2009, Plaintiff sent a second letter to Deputy Warden Trierweiler complaining of the lack of medical treatment he was receiving. (Dkt. #1

at ¶ 73). Trierweiler "refused to intervene" on Plaintiff's behalf and instead conspired with other prison officials to deny Plaintiff medical care. (Dkt. #1 at ¶ 73).

On December 31, 2009, and again on January 4, 2010, Plaintiff was examined by Nurse Bowerman-Torres who refused to provide Plaintiff with medical treatment. (Dkt. #1 at ¶¶ 74-75). On January 7, 2010, Plaintiff was examined by Nurse Plath who refused to provide Plaintiff with medical treatment. (Dkt. #1 at ¶ 76). Five days later, Plaintiff was examined by Dr. Miles who again refused to provide Plaintiff with medical treatment. (Dkt. #1 at ¶ 77). On January 19, 2010, Plaintiff was examined by Dr. Miles and Nurse Susan Hogan. (Dkt. #1 at ¶ 78). Despite discerning abnormalities in Plaintiff's right lower extremity, Miles and Hogan conspired to deny medical treatment to Plaintiff. (Dkt. #1 at ¶ 78). On January 24, 2010, Plaintiff wrote to Warden Lafler complaining about the insufficient medical care he was receiving. (Dkt. #1 at ¶ 79). Lafler "refused to intervene" and instead "conspired with the Defendants" to deny medical treatment to Plaintiff. (Dkt. #1 at ¶ 79).

On January 25, 2010, Plaintiff was examined by Dr. Miles. (Dkt. #1 at ¶ 80). Plaintiff complained that he was experiencing "severe and excruciating pain" in his right lower extremity, but the doctor refused to provide medical treatment to Plaintiff. (Dkt. #1 at ¶ 80). The following day, Plaintiff was examined by Dr. Miles and Nurse Laughhunn. (Dkt. #1 at ¶ 81). While an examination of Plaintiff's right lower extremity revealed abnormalities, Laughhunn refused to provide medical treatment to Plaintiff and, furthermore, noted that "no further testing needed at this time, per standing orders for this patient." (Dkt. #1 at ¶ 81).

On January 31, 2010, Plaintiff sent Warden Lafler a letter complaining about the insufficient medical care he was receiving. (Dkt. #1 at ¶ 82). Lafler took no action on Plaintiff's behalf and instead "conspired with health care staff" to deny medical treatment to Plaintiff. (Dkt. #1 at ¶ 82).

On February 7, 2010, Plaintiff sent a letter to Deputy Warden Trierweiler complaining of the lack of medical treatment he was receiving. (Dkt. #1 at ¶ 83). Trierweiler took no action on Plaintiff's behalf and instead conspired with other prison officials to deny Plaintiff medical care. (Dkt. #1 at ¶ 83).

On February 17, 2010, was examined by Nurse Laughhunn. (Dkt. #1 at ¶ 84). Despite discerning abnormalities in Plaintiff's right lower extremity, Laughhunn refused to provide Plaintiff with medical treatment. (Dkt. #1 at ¶ 84). On February 21, 2010, Plaintiff sent a letter to Dr. Jeffery Stieve, Dr. Haresh Pandya, Dr. Edelman, and John Steele to report that he was in need of "immediate medical treatment for occlusion." (Dkt. #1 at ¶ 85). Stieve, Pandya, Edelman, and Steele refused Plaintiff's request for medical treatment and instead conspired with the "health care staff" to deny treatment to Plaintiff. (Dkt. #1 at ¶ 85). On February 25, 2010, Plaintiff was examined by Nurse Melissa Hearld. (Dkt. #1 at ¶ 86). Despite Plaintiff's reports of "severe and excruciating pain" in his right lower extremity, Hearld refused to provide Plaintiff with medical treatment. (Dkt. #1 at ¶ 86).

On March 1, 2010, Plaintiff was examined by Dr. Joseph Cotroneo who concluded that Plaintiff "clearly has had recurrence of his claudicating and advancement of his disease again." (Dkt. #1 at ¶ 87). The doctor performed a CT angiogram the results of which revealed that Plaintiff was experiencing "multilevel stenosis" and "probable total occlusion of the very distal posterior tibial artery and some moderate stenosis of the right common iliac artery." (Dkt. #1 at ¶ 87).

On March 4, 2010, Plaintiff was examined by Dr. Miles. (Dkt. #1 at ¶ 88). The doctor refused Plaintiff's requests for medical treatment, noting that he had been examined by a vascular surgeon only three days previously. (Dkt. #1 at ¶ 88). On five occasions between March 11, 2010, and April 22, 2010, Plaintiff was examined by Nurse Keller-Jerome, Nurse Wiles, or Nurse Laughhunn. (Dkt. #1 at ¶¶ 89-93). On each occasion, Plaintiff's requests for medical treatment were denied. (Dkt.

#1 at ¶¶ 89-93). Plaintiff was released from incarceration by the Michigan Department of Corrections on May 1, 2010. (Dkt. #1 at ¶ 94).

Plaintiff initiated this action on December 14, 2012, against Corizon Correctional Healthcare, Blaine Lafler, Tony Trierweiler, Richard Miles, Adam Edelman, Jeffery Stieve, Hareash Pandya, Gamat Isaacs, Eileen McKenna, Barbara Plath, Summer Laughhunn, Jill Keller-Jerome, Paula Wiles, Susan Hogan, Julie Pugh, Jan Bowerman-Torres, Melissa Hearld, Donna Schafer, and Kent Filsinger. (Dkt. #1). Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff further alleges that Defendants engaged in a conspiracy to deny him medical treatment in violation of his Eighth Amendment rights.

On January 22, 2013, the Honorable Gordon J. Quist dismissed Plaintiff's claims against Defendants Lafler, Trierweiler, Isaacs, McKenna, Hogan, Pugh, Schafer, and Filsinger. (Dkt. #5-6). The Court also dismissed Plaintiff's conspiracy claims as well as all of Plaintiff's claims concerning conduct occurring prior to December 14, 2009, as barred by the relevant statute of limitations. Defendant Keller-Jerome now moves for summary judgment. Plaintiff has failed to respond to Defendant's motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317,

325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## **ANALYSIS**

Plaintiff alleges that Nurse Keller-Jerome refused to provide him with medical treatment on the following dates: (1) June 13, 2009; (2) July 1, 2009; (3) September 29, 2009; (4) March 11, 2010;

(5) April 1, 2010; and (6) April 22, 2010. As previously noted, however, Plaintiff's claims concerning conduct occurring prior to December 14, 2009, have already been dismissed as untimely. Thus, the only claims remaining against Defendant Keller-Jerome are that she violated Plaintiff's Eighth Amendment rights by denying his requests for medical treatment on March 11, 2010; April 1, 2010; and April 22, 2010.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that Plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

In support of her motion for summary judgment, Defendant Keller-Jerome has submitted an affidavit in which she asserts the following. (Dkt. #41, Exhibit 1). At all times relevant to this lawsuit, Keller-Jerome was employed by the Michigan Department of Corrections (MDOC) as a Registered Nurse. On March 11, 2010, Keller-Jerome examined Plaintiff who denied that he was experiencing pain. Keller-Jerome provided Plaintiff with a "treatment plan" and instructed him to "contact health services as needed."

Plaintiff was examined by Defendant Keller-Jerome on April 1, 2010. Plaintiff participated in a doppler examination of his right lower extremity, the results of which revealed "pulses

present." Further examination indicated that Plaintiff's skin was warm and dry and that he was experiencing "brisk capillary refill." Keller-Jerome also discerned no evidence of infection or edema. Plaintiff was again provided with a "treatment plan" and instructed to "contact health services as needed." Plaintiff was again examined by Defendant Keller-Jerome on April 22, 2010. Plaintiff did not complain of any pain or discomfort, but instead simply wanted to know when his "parole labs" would be completed. Keller-Jerome arranged for Plaintiff to complete these items over the following week.

The evidence submitted by Defendant Keller-Jerome establishes that she did not act with a sufficiently culpable state of mind to violate Plaintiff's Eighth Amendment rights. Instead, the evidence reveals that Plaintiff simply disagrees with the medical treatment he received which, as previously noted, does not implicate the Eighth Amendment. The allegations in Plaintiff's complaint are not verified. Plaintiff has also failed to respond to Defendant's motion for summary judgment. Thus, Plaintiff has failed to submit any evidence in opposition to Defendant Keller-Jerome's properly supported motion for summary judgment. The undersigned, therefore, recommends that Defendant Keller-Jerome's motion for summary judgment be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendant Keller-Jerome's Motion for Summary Judgment</u>, (Dkt. #40), be **granted**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: July 15, 2013                                          /s/ Ellen S. Carmody
                                                             ELLEN S. CARMODY
                                                             United States Magistrate Judge